Thank you, your honor. Good morning. You may have pleased the court. My name is Mark Mann. It's with my co-counsel, David Newdorf, who represents the plaintiff propellant in this case, Jean Rustico. I'll be addressing the choice of law issue for the court today. And my co-counsel will address the tolling agreement. This time, we'd like to reserve two minutes for rebuttal. Your honor, the issue before this court, quite simply, is does California apply the governmental interest analysis in statute of limitations, choice of law disputes, just as it does any other choice of law issue? Or is this court going to perpetuate the carve out created by the Ashland-Nelson line of reasoning? So the question then becomes, why should this court ignore Ashland-Nelson in favor of more recent cases? And the answer is that at the time Ashland-Nelson was decided shortly after, in other cases, the California test was not clearly applicable to procedural issues, traditionally procedural issues like statute of limitations under the foundational case of Reich versus Purcell. Now, I actually would argue that Reich versus Purcell did make this clear. But when these cases were decided, they relied on the restatement's traditional approach that treats procedural issues as different from substantive legal issues for a choice of law analysis. The governmental interest analysis does away with that. As the courts who have followed it properly have said, we now analyze statute of limitations questions just like any other choice of law question, and we do not automatically apply California statute of limitations in every case. Even cases that intuitive is relied upon in its brief don't follow Ashland-Nelson per se or question Ashland-Nelson. Some actually proceed to the comparative impairment step, but many, including Target Tech versus Williams Advanced Materials, pointed out that the rule of Ashland-Nelson essentially reestablishes the restatement approach in any case where the defendant resides in the foreign state. Under Reich versus Purcell and under McCann, the governmental interest analysis is a fact intensive case specific analysis. The carve out created by Ashland-Nelson is anathema to that. This carve out says that when you have these particular identifiable facts, a forum defendant and the California statute is shorter, we apply the California law. We don't even look to the other state's interest because it's a false conflict. These cases, in addition, the Theranos case says similarly, the result would be the same under a traditional governmental interest analysis as opposed to Deutsch. Deutsch has been described by courts as setting a presumption where a rare exception must apply in order for California courts to apply a foreign statute of limitations. Again, this presumption hails from the restatement that has a very different theoretical basis for that presumption. And what's more, California, when the situation is reversed and the plaintiff is from California and California provides the longer statute, has said, and this is this is actually key here because this is a product liability case like these cases were. Cortez and Sullivan are what I'm referring to. The California court has a strong interest in protecting its citizen from harm done by a foreign manufacturer who chose to do business in that state. When you look at a true governmental interest analysis test, what you're looking for is where the case is truly centered, where which state's law and policy will be more impaired by the failure of the court to apply that law because the grouping of the context and the center of the case is actually in that state. When you're in a product liability suit, the stream of commerce theory somewhat imported from jurisdictional analysis supplies the basis for saying that unlike contractual cases where the focus of the contract may have been elsewhere, when the manufacturer shifts the product into a foreign state with the stream of commerce. My apologies, is there a question, Your Honor? Excuse me, I have a question since you paused. I mean, since you have a California defendant here, I mean, to what extent does Connecticut's interests need to be considered in the second step of the governmental interest test since you really have a California defendant? Thank you, Judge Kane. As cases have pointed out, the second step looks to whether or not the interest is legitimate. You don't compare the interest until you get to the third step. And when you're looking at the second step, you do still have to consult foreign law and the policy behind it to see where they have an interest. As we've cited to the court, the Kelly versus Goodyear case out of Connecticut, the federal district court of Connecticut has stated Connecticut has a legitimate and strong interest in protecting its citizens from defective products sent into the state, as well as those manufactured here in enacting the statute of limitations that we rely on, which is particularly contained within Connecticut. So in part, the answer to the answer to the question in part depends on what you define as the interest of the state. I mean, the interest of the state is confined to the narrow interest underlying the statute of limitations. You get one answer. But if the interest of the state is defined more broadly to include having a holding defendants responsible for defective products that come into your state, you might get a different answer. And we've lost him. Mr. Gerard. Yes, Judge, it looks like he's reconnecting via phone, I think, or here he is. Your Honor, my apologies. We actually had a power outage at our law office here just now. I'm in the hallway dim light because the backup lights are on. I hope you can see me, but I'm on my phone now and I'm prepared to continue if the court would like. I'm so sorry. You heard my question. You probably did. I did not, Judge Wardle. I'm sorry. OK, my question is, following on what you just said about Connecticut's interest, is when you're looking at the governmental interest test, the in part, the answer in applying the test depends on how broadly or how narrowly you define, for example, Connecticut's interest. If you define Connecticut's interest is only its interest underlying its own statute of limitations. You might get one answer. But if you define Connecticut's interest as more broadly encompassing an interest against having an out of state manufacturer send defective products into Connecticut state and holding them accountable, you might have come up with a different answer. With Judge Wardle, the the case that. I've cited in the quote from it, discusses this caused injury in that state when the plaintiff's residence is the same as the state of injury, which is also deemed to be where the conduct or wrong occurred in products, liability cases. Then Connecticut has the stronger interest. And I would note also for the court that California follows this same logic when it is a California plaintiff involved and the product was shipped in the California. This is where the Cortez and Sullivan cases come in. So what we have essentially from Ashland and Nelson is a gloss on the test that puts a thumb on the scale in one particular type of case. And that's where you have a California form. And California in under if Ashland and Nelson is followed, treats those cases differently than it does any other government interest analysis case. And so, you know, when you get to that third step, this is where this is where the the rubber meets the road. On the one hand, you have Connecticut having a strong interest with the longer statute and protecting its plaintiff. And you have California with a legitimate interest because you have a California defendant. And in those cases, what tips the balance is where the conduct wrong or injury occurred when that is the same as the plaintiff's residence. Then the grouping of contacts there leads to a stronger interest of that foreign state. The Chen case versus LA truck centers. Here, we don't have a Connecticut resident, right? Don't we have a Florida resident? That's a good point, Your Honor. The cases do discuss the plaintiff's residence at the time that the injury occurred. And at the time, our plaintiffs were California were Connecticut residents. This is important, and it's a good distinction. I'm glad you brought it up because in the McCann was an after acquired residence case and McCann then discounted the California residents of the plaintiff because the plaintiff didn't move to California until many years later. In this case, it's the exact opposite. The after acquired residence of Florida is relevant because the plaintiff was a Connecticut resident at the time that the injury occurred. Is that alleged to the complaint? I didn't I don't remember reading. I remember thinking how odd that she went to Connecticut to get her surgery. Your Honor, I do not have the complaint in front of me. I apologize. I believe we did. But it is in our briefing and it is an uncontested issue in this case. As far as the facts go, the plaintiff, I do not think intuitive is going to get up and disagree that the plaintiff was injured in her home state. This was a surgical accident that happened. The surgeon as well operated in Connecticut on a Connecticut resident using a device sent to the state by intuitive. And when you look at the last event cases, which the district court in this case Judge Koh actually endorsed this ruling, Grace versus Apple. When you're looking at manufacturing product liability cases, the last event supplants the you know, well, the conduct happened in in California where the product was manufactured explicitly. No. In California law, the the the conduct is deemed to occur where the injury occurs, where the where the the the manufacturer sent the product. And in this case, the last event is actually quite egregious because three months before our plaintiff's accident and injury, intuitive had a second generation product cleared by the FDA. They failed to warn the doctors and the hospitals using this device throughout the country, including in Connecticut. Had they given that warning, had they recalled the device in October as they should have, this injury never would have occurred. On the other hand, Jean Rustico never knew that a California manufacturer's product was being used in her surgery. She didn't reach into California. She didn't direct any actions in California. She had no connection to California. California came about as the form as a form of convenience for intuitive through a tolling agreement, which also countenances a factor favoring the application of foreign law here, because one of the the the the factors considered is is whether or not there's forum shopping involved. Well, if there were to be found any forum shopping in this case, it would be on the part of intuitive as they selected this form as a form of convenience for this action. I am not sure, your honors, where I am on time. Has the the shorting of my my electrical system here is kind of thrown me off that I can continue if the court would like. But I don't want to prejudice my co-counsel's ability to argue. Did you split time? So if you want to. We did. OK, you are. We'll give you extra time because of the power outage and our question, my question is taking up your time. But why don't we hear from Mr. Newdorf first? Thank you, Judge Warnock. Good morning, your honors. May it please the court. I'm David Newdorf for appellants, and I'm going to discuss today the interpretation of the tolling agreement. Now, even if the two year statute of limitations under California law applies in this case, the action was timely filed based on the tolling agreement and subsequent extensions of the agreement. And there are three points I want to discuss in support of appellant's position. First, the trial court erred in finding that the claims were already time barred when the tolling period commenced. The trial court found that the claims were barred because California's two year statute of limitations applied and the court applied that statute of limitations retroactively without any basis under the context of this case. So on the basis of the court's reasoning, it found that the claims were time barred before the tolling period began. But at that point, before the tolling period began, there was no lawsuit. There was no answer asserting a statute of limitations from the defense. There was no choice of law analysis by any court. And most importantly, up to the day when the tolling period began, plaintiffs could have timely filed their complaint in Connecticut, which has a three year statute of limitations for products liability. Right. May I interrupt and ask this question? Yes. If the trial court was correct that at the time you signed the tolling agreement, the statute of limitations had already passed. Isn't the tolling agreement entirely illusory and shouldn't be enforced? I, Your Honor, we're not making that argument. I know you didn't make that argument, but I find it troubling that you entered into this tolling agreement, not knowing what statute would apply. Two weeks after, if the California statute applied, the statute of limitations would have run. So what's the whole point of the tolling agreement? Your Honor, I agree that this is a gotcha situation. We have a tolling agreement. It does seem to me to be a gotcha situation that maybe someone was planning  that you could have filed this maybe in one of three places, Florida, Connecticut or California. And the tolling agreement bound you to file in California. That's that's absolutely right, Your Honor. Now, the other reason that this tolling agreement does not bar it is based on the tolling agreement itself. And here, the context, part of which you've mentioned, Judge Wardlaw, is that when it drafted the tolling agreement, intuitive knew that there was no decision between competing statute of limitations and choice of law. And many of these cases do not present simple questions, including this case does not present a simple question of choice of law. It's not the hypothetical easy case that it seemed that the court treated it. The easy case being that you have a California resident injured by another California resident in an accident that occurred in California. Now, in that hypothetical easy case, there's no argument that only California law could possibly apply. Here, you have a tolling agreement to cover thousands of cases, most of which were not those simple cases. And it discusses tolling the applicable statute of limitations without stating or determining in advance what that would be because it simply wasn't possible given the context of this tolling agreement. Now, I do want to make another point while still reserving time for rebuttal. And I believe the court will give us additional time to do that. So I want to make this a second point, which is a premise of the first point. The tolling agreement did not require Ms. Rustico to file in California until she opted into the agreement, which was a later date than the lawyers signing the agreement. Now, this is the only reasonable interpretation of the tolling agreement. Here, the parties exchanged promises to perform. The plaintiffs, for their part, agreed to delay filing a lawsuit and to file only in one of three courts specified in the agreement. And intuitive agreed to toll the statute of limitations, the applicable statute of limitations. Here we have a contract that does not specify the timing or order of the performances. And it's set out in the restatement of contracts. The legal presumption is that if the performance of of promises, exchange and agreement can be performed simultaneously, then they shall be performed simultaneously. So in other words, Ms. Rustico was not obligated to file in California until intuitive was obligated by its promise to toll the statute of limitations. Now, according to the contract, and this is not disputed, the tolling period began when Ms. Rustico opted in, not at the earlier point when the lawyers signed the tolling agreement. Now, simultaneously, when she opted in, Ms. Rustico became obligated to file in California. Now, if you combine the first two points, the result is that Ms. Rustico was free to file for a claim in Connecticut the day before she opted in. The day that she opted in, two things occurred simultaneously. One is intuitive was obligated to toll the statute of limitations. And likewise, Ms. Rustico was obligated by her promises to delay filing a lawsuit and to file only in specified courts. So the savings clause that intuitive relies on does not help them here because the before the tolling period began, there was no basis for finding that Ms. Rustico's claims would have been time barred because she was not locked into a California forum. So there's no basis for assuming that two years after the surgery, the claims became time barred. I do want to save time for rebuttal, so if the court has no questions, I will reserve time for the remainder of the time for rebuttal. I have a question. So did so if we interpret the contract the way you just suggested, then that gets rid of my illusory argument. Agreed. OK, it makes it unnecessary. It doesn't get rid of it. Well, I mean. If you interpret it your way, it makes the contract not illusory because you're simultaneously getting something. That's correct. Or you're opting in. Agreed. OK, thanks. Thanks. OK, let's hear from Mr. Ruby. Good morning. If it pleases the court, my name is Alan Ruby. May I ask, please, if the court can hear me if I talk like this? We can hear you very well. All right. Thank you. Let me break down my comments, if I may, please, into the two increments that that council elected. One is to talk about the choice of law issues and then separately talk about the excuse me, the tolling agreement on the the choice of law issue is as the briefs and argument now from plaintiffs have evolved. This is a request, I gather, to overrule the Nelson versus international paint and in effect overrule the California Court of Appeal decision in Ashland Chemical. I don't know that the agenda of this court could hardly ever be to overrule a state court a decision on a conflict of laws decision. Of course, the court could express its disapproval and its disagreement, if any, with with the state court. But isn't this really taking us into territory where the court is actually being asked to women who are pregnant? You. Mr. Ruby. Yes, now I can hear you, Your Honor. OK. All right. Please, please resume. All right. The I wonder if the case hasn't migrated into an argument by the plaintiff to ask the court to invoke California rule of court eight point five four eight, which, as your honors know, would allow this court and a few other select courts if they wish to ask the California Supreme Court to rule on a particular issue. In this diversity case, of course, the rules, the framework of the conflict of laws analysis is drawn from, in this instance, in the forum state from California. And there is a mechanism that isn't used that often. It can be used in an appropriate case to ask the California Supreme Court to provide legal guidance where there is none. That's what it looks like they're asking for now. Really, the phrase that counsel used was the we shouldn't. The court should not perpetuate the that's the word they use. The earlier decisions in Ashland Chemical and Nelson, which is, of course, a Ninth Circuit case. Actually, those cases seem to have held up quite well. There's been no criticism or reservation about them by the California Supreme Court as to the California Court of Appeal decision in Ashland Chemical. The Ninth Circuit jurisprudence on this sort of sub part of the conflict of laws analysis is not does not indicate any sort of mass rejection of the rules that were laid down procedurally because they're mostly procedural rules in those two cases. And if it isn't broken, it doesn't require fixing the these cases. I'm going to lump them together because they often appear in the reports together. The state court case of Ashland and the following case of Nelson, they were cited in and this is in our brief. I don't like to repeat my brief, but they were cited and relied upon in 2019 in a case called, interestingly, ready for a change. It was a different kind of change they were talking about. So the request to overrule those cases comes a little late. And there's no grounds shown for it because someone disagrees with a case that isn't, I believe, in the jurisprudence of this court, in itself, a grounds to undo or redo cases that have been around for a long time. And finally, on this point, what do the plaintiffs say the law should be changed to? If Ashland Chemical and Nelson were, what, disapproved or withdrawn or no longer good law, they would leave quite a vacancy in the law. And where is it written what that change should be? With respect, I think, again, there's been a migration of their position. Apparently, the plaintiff recognizes that the district court ruled on conflicts in an entirely appropriate way. As your honors know, the court wrote a comprehensive opinion dealing with every issue that had been presented by the motion before it. The court relied upon the precedents that it was entitled, some might even say compelled to rely upon, and applied them in accordance with their plain terms. That doesn't, I respectfully submit, seem like error of a kind, of any kind, much less an error that ought to be corrected with the extreme measures of overruling cases that have been on the books for a long time. Finally, and actually, this is a bridge to the next section about the tolling agreement. The suggestion is made in the briefs of plaintiff and in their comments today that somehow the interest of California, California doesn't really have an interest. Explicitly, they argued this to Judge Coe in the district court that this is a Connecticut case. There's no connection with California. None. It's all, everything about it is Connecticut. And that set of assertions, I'm sorry to say, is impeached by their own complaint. And Judge Coe, she was tactful in dealing with this, but Judge Coe recognized that looking at the complaint that Mr. and Mrs. Rustico filed, there's quite a different picture. In fact, to understand what the procedural history, I'd ask the court to understand that the plaintiff was always extremely, I can't say only, I don't know, but certainly extremely and unashamedly interested in litigating its case under California law. There is an explicit set of pleadings trying to, which have as their aim, to invoke California's laws of pertaining to punitive damages. And there are a series of allegations in connection with that part of their complaint, which is, we know, a judicial admission, that this is a California case. May I please invite the court's attention? May I ask a factual question? Yes, Your Honor. At the time of the injury, do you disagree that Mrs. Rustico was a Connecticut resident? I do not disagree with that. Thank you. January of 2012, I believe. No, I don't. I don't disagree with that. If I may please commend to the court's attention the complaint, the first amended complaint, which is at pages 53 to 101 of the excerpt of record. And in particular, may I please invite the court's attention to pages 41 through 42 and 46, which contain, among other things, paragraphs 166 through 170, which are the quite specific pleadings of Mr. and Mrs. Rustico for, actually, 163 through 170, where they plead, quote, California has an interest in deterring activities that illustrate a, quote, conscious disregard of safety of others, close quote, originating from corporations that have a, quote, substantial presence within its borders, close quote. Those are California's borders, not Connecticut's borders. Next paragraph, intuitive actions describe above, illustrating conscious disregard of the safety of others. Next paragraph, intuitive has a substantial business presence in California. Next paragraph, intuitive makes DaVinci robots in California. Next paragraph, intuitive directs its operations out of California. Next, intuitive decisions to use faulty insulation, et cetera, were made in California, et cetera, et cetera. This is a plaintiff, or excuse me, there were two plaintiffs, who quite openly are asking for California law to be used in the focus of their case, which is punitive damages. And there are other parts of the complaint, I don't want to run over my time, where they, plaintiffs invoke California business and professions code, uh, section, uh, uh, the 14,200, the, uh, unfair competition, 17,200, excuse me, the unfair competition statute. So if the idea is that the judge code did not, uh, uh, adequately balance the state in for competing state interests here. I mean, the, the short answer is that following settled established case law, judge co recognized that there was no conflict, an actual conflict, true conflict. I think the expression is in respect to statute of limitations, but judge co also signaled. And she said, don't anybody be assuming I'm paraphrasing, of course, that if this were decided under Cal Connecticut law, it would come out any differently. It's still, uh, the California interests are enumerated in the complaint. And she called them out quite specifically. So if someone had the notion that it would be a good idea to overrule Nelson and Ashland chemical, I respectfully submit, this is not the record to do that on, uh, by, by a long shot. Now, um, to, to turn to the, uh, the issue of the, uh, the tolling agreement, the, the tolling agreement, uh, forgive me, the California statute of limitations expired, ran out before mrs. Rustico became a party to the tolling agreement. The, the, the California statute of limitations had passed by that time. It seems to be the argument here that a statute of limitations can only actually run out when somebody has filed a lawsuit and litigated the issue of statute of limitations. I really, that's the only way you can get from, from the reality of, of the pleading and the case to, to this argument. How would the outcome of this case differed if counsel had provided Mrs. Rustico's name before January 12th, 2014? Uh, if, if they had provided her name, uh, then, uh, I'm just going to talk myself through this. I think, uh, the tolling agreement would have begun at the time the name was provided. And if that was less than two years from the date of her surgery and her informed of the, uh, wrong or the injury. It was two weeks earlier than, than she actually provided it. Two or three weeks. You're saying you're interpreting the tolling agreement to say that because she didn't, um, she didn't disclose her name or the council did not disclose her name to the defendant two weeks earlier. She, nonetheless, two weeks later became a party to this agreement that benefited her. Not at all. That's what you're saying. No, if your honor, please, uh, please, uh, I, uh, say that the tolling agreement would have the tolled of the running of the statute of limitations. Whenever she came on board, the, the, uh, last concept that your honor, uh, articulated was she got no benefit from this at all. I respectfully disagree with, uh, it is all over the pleadings. Uh, no one disagrees that this framework. The council, maybe I'm not articulating this as clearly, but she gets no benefit from the tolling agreement. If it's, uh, if the statute, the applicable statute ran two weeks before her name is provided to the defendant by its terms. Oh, and forgive me, your honor. I, I, I feel obliged to point out that the tolling agreement was part of a process to try to settle cases and signing the tolling agreement was an entirely optional step that someone with an injury claim could, uh, uh, utilize if they wished to try to get their case settled. And, and I, I can't in good conscience say, well, that didn't confer a benefit on any way. I mean, according to the complaint, hundreds or thousands of people did this and, and the, the record fairly reflects that a great many cases were settled. But I'm saying in her case, in her case, she, her name was provided to you two weeks after the California statute ran, which means that she had no claim. Her claim was extinguished under California law. Right. But immediately because she was down to file a suit in the Northern district of California. But yes, but if I may, your honor, we must always remember, I believe that if, uh, she was free as expired under California law without any intercession from intuitive or anyone else. So then she signed the tolling agreement and, and she, uh, uh, was obliged under the tolling agreement to, uh, uh, uh, uh, file in certain places under certain circumstances. She was free if her lawyers at that time had said, oh my gosh, uh, California, there's a two year statute and that's going to apply. But, but our claim is still alive in Connecticut. She had every right to withdraw. There was almost a year left as the your honors chronology shows. She was perfectly free then to send a letter to intuitive saying we withdraw from the tolling agreement. And they had almost a full year to go ahead and file in Connecticut. I don't agree that that would actually change the outcome of things, uh, because California law under a conflicts analysis of any kind would have still pertained, but they would have had ample time to go ahead and litigate this. The notion that somehow they were told, oh my gosh, you, you've got this problem. You've got to file in California. If it were a problem entirely solvable under the plain terms of the solvable because the California statute of limitations would apply even if she had filed in Connecticut. Well, but then yes, but the implication of that is that then the, in effect, the Connecticut statute of limitations ran out the same time that the California statute of limitations ran out. They're arguing the opposite. They're arguing that Connecticut would have been their safe Harbor, their salvation. I have a different view of things, but if they were right, if they were right, that Cal Connecticut would have saved them. If you want to accept that supposition, then under the plain language of the tolling agreement, she could have withdrawn. And by their analysis, problem solved. We're not, we're not having this discussion. If you, if the court is willing to, uh, uh, see to, or adopt their assumption, that's all. That's what they think the case looks like. And even under the way they look at it, why didn't they withdraw? All right, council. Thank you. You're well over your time and I'll give, um, rest to go a couple minutes, two minutes for rebuttal. Thank you, your honor. I first on the choice of law issue, uh, while I'm always reluctant to sitting in a diversity case, uh, in particular as to the California choice of law analysis for statute of limitations must apply what it believes the California Supreme court would hold the law that the California Supreme court would set out. Uh, intuitive council argues that this is not the setting in which Ashland or Nelson should be over ruled. Uh, that's, not, uh, this court has the power for the following reasons. Ashland was a 1982 case. Nelson was a 1983 case. In the decades since they were decided, the California Supreme court has never endorsed the holdings that intuitive relies on. It is never stated that when it comes to statute of limitations, where there is a California defendant, the shorter California statute of limitations always applies. That's the rule of Ashland. That's the rule of Nelson. It's never been upheld, stated, applied, or discussed by the California Supreme court. And in the decades since they were decided, uh, uh, I think judge Cain has a question. So based on what you, you just stated, you're asking this court now to make an eerie guess as to what the California Supreme court would do. Am I understanding you correctly? Uh, I, I don't want this court to guess. I want the court to consider the decades. He's not really stated anything on this point. And so I guess maybe I'm misunderstanding your argument. No, that, that is my argument. I, I wouldn't say guess, uh, but yes, apply the decades of California jurisprudence that the California Supreme court has only said that when it comes to statute of limitations and choice of law, we apply the governmental, uh, interest analysis the way we do on any legal issue. There's no special gloss that the California Supreme court applies to statute of limitations cases. And I believe my time is up. All right. Thank you very much. Council Rustico versus intuitive surgical, um, is submitted.
judges: Wardlaw, Bea, Cain